UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

WILLIAM OLSON, individually; and
MAUREEN OLSON, individually, and as
trustee of the James O. Wright Family Trust,
dated 9-28-04, Maureen Wright, Trustee;

      Plaintiffs,

v.

LIBERTY INTERNATIONAL FINANCIAL
SERVICES, INC., a Florida corporation;
CHRISTOPHER ANZALONE, individually;
and JEFFREY SCHULER, individually;

      Defendants.

_____/

## COMPLAINT AND JURY DEMAND

Plaintiffs, WILLIAM OLSON ("Mr. Olson"), and MAUREEN OLSON ("Mrs. Olson"),

hereby sue Liberty International Financial Services, Inc. ("Liberty"), Christopher Anzalone

("Anzalone"), and Jeffrey Schuler ("Schuler"), and allege as follows:

### Parties, Jurisdiction, and Venue

1.     Plaintiff, Mr. Olson, is a Citizen of the state of Washington, over the age of 18

and sui juris.

2.     Plaintiff, Mrs. Olson, is a Citizen of the state of Washington, over the age of 18

and sui juris.

3.     Defendant, Liberty, is a Florida corporation, authorized to and doing business in

Broward County, Florida and a citizen of Florida, for diversity jurisdiction purposes. Liberty's

principal address is located in Ft. Lauderdale, Florida – within this circuit.

4.     Defendant, Liberty, is a brokerage in the physical commodity marketplace, brokerage, wherein it receives investors' funds in order to purchase commodities such as precious metals, as well as positions within the real estate market. In that capacity, Liberty specializes in servicing the acquisition of tangible assets, special situations and secondary market activity in the physical commodity arenas for its clients. Specifically, as it related to this action, Defendant, Liberty, is in the business of making of contracts of sale of precious metals such as silver, gold, palladium and platinum in interstate commerce or for future delivery. Upon information and belief, Defendants, Schuler and Anzalone, intend to issue an IPO (initial public offering) for Liberty in the immediate future, which requires them to demonstrate that Liberty possesses strong financial foundation.

5.     Upon information and belief, Defendant, Anzalone, resides in Palm Beach County, Florida, and is a citizen of Florida, for diversity jurisdiction purposes. Anzalone is the President and Chief Operating Officer of Defendant, Liberty.

6.     Upon information and belief, Defendant, Schuler, resides in Palm Beach County, Florida, and is a citizen of Florida, for diversity jurisdiction purposes. Schuler is a Director and Vice President of Defendant, Liberty. In that capacity, Defendant, Schuler, is responsible for the sales and marketing, as well as all purported research conducted by Liberty in support of its products.

7.     This Court has subject matter jurisdiction over this case under 28 U.S.C. §1332(a) as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between Citizens of different States.

8.      Further, this Court has subject matter jurisdiction over this case under 28 U.S.C. §1331 as this case involves a federal question arising under 7 U.S.C. §§ 1 et sec. — the Commodity Exchange Act ("CEA").

9.      Venue is appropriate under 28 U.S.C. §1391(a) or (b), as all defendants reside in Florida and this civil action is brought in a judicial district where any defendant resides.

### General Allegations

10.     On or about August 12, 2010, Plaintiffs, Mr. Olson and Mrs. Olson (on behalf of herself and as trustee of the James O. Wright Family Trust, dated 9-28-04, Maureen Wright, Trustee), agreed to become clients of Liberty's. See, copies of agreements — attached as Composite Exhibit "A"

11.     In order to facilitate Plaintiffs' investment, on August 17-18, 2010, the Plaintiffs wired a total sum of $140,411.25 in three separate wire transfers to the Defendants, for the purpose of investment in precious metals, as well as in a Real Estate Fund managed by the Defendants.

12.     On September 16, 2010, Plaintiffs wired to the Defendants the additional amount of $10,000.00 to be used as further investments.

13.     On October 14, 2010, Plaintiffs wired to the Defendants the additional amount of $75,000.00 to be used as additional investments.

14.     Finally, On October 19, 2010, Plaintiff wired the total amount of $206,364.39 in two separate wire transfers to the Defendants.

15.     The total sum of money wire-transferred by the Plaintiffs to the Defendants was thus $431,775.64. The records evidencing all wire transfers will be provided upon request through the discovery process.

16.     The Defendants held Plaintiffs' money in various investment accounts that eventually consisted of several silver positions and a certain "Real Estate Fund" for which no documentation was provided until several months after it had been requested.

17.     Prior to pledging their funds to the Defendants, Plaintiffs were promised by Defendant, Anzalone, that reports of the whereabouts of their money would be provided throughout the investment period and, most importantly, that the money would be returned within a reasonable time (allowing for liquidation) upon Plaintiffs' request.

18.     While Defendant, Anzalone, was the main contact for Plaintiffs with Defendants' organization, it was, in fact, Defendant, Schuler, that was in charge of the operations of Liberty. Further, Defendant, Schuler, also communicated with the Plaintiffs – both directly and through Defendant, Anzalone.

19.     For purposes of the CEA, both Defendants Anzalone and Schuler were, at all material times, "Commodity Trading Advisors" as defined by 7 U.S.C. §1a(6)(A) as they engaged in the business of advising others, either directly or through publications, writings, or electronic media, as to the value of or the advisability of trading in any contract of sale of a commodity for future delivery for compensation or profit.

20.     For Defendants' brokerage services, Plaintiffs agreed to, and, in fact, paid three percent (3%) as a service fee, which were deducted by the Defendants from Plaintiffs' investment accounts.

21.     As of February, 2011, the Plaintiffs' silver positions were held in four separate accounts.

22.   As of February 22, 2011, Mr. Olson's account had 444 silver units, each valued at $34.50 – for a total market value of $15,318.00, in which Mr. Olson had $15,318.00 in equity. See, Exhibit "B".

23.   As of February 22, 2011, Mrs. Olson's account had 3,040 silver units, each valued at $34.50 – for a total market value of $104,880.00, in which Mrs. Olson had $104.880.00 in equity. See, Exhibit "C".

24.   As of March 29, 2011, The Wright Living Trust's account had 16,000 silver units, each valued at $36.60 – for a total market value of $585,600.00 in which it had $207,563.42 in equity. See, Exhibit "D".

25.   As of April 5, 2011, Mr. and Mrs. Olson's joint account had 13,000 silver units, each valued at $38.00 – for a total market value of $494,000.00 in which they had $183,121.04 in equity. See, Exhibit "E".

26.   On or about March 30, 2011, Mr. Olson requested that all Plaintiffs' accounts be liquidated and the money returned to Plaintiffs.

27.   The total amount in equity held in Plaintiffs silver accounts as of March 30, 2011 – when the Plaintiffs requested the return of their money was $510,882.46.

28.   Additionally, the Defendants continued to hold $110,000.00 of Plaintiffs' funds in a certain "Real Estate Fund".

29.   With respect to the "Real Estate Fund", in November, 2010, Mr. Olson requested that the $110,000.00 held in the "Real Estate Fund" be returned. That request has not yet been honored by the Defendants.

30.   To date, the Defendants have returned the total of $205,000.00 to Plaintiffs through two separate wire transfers of $100,000.00 each on March 31, 2011 and April 6, 2011,

as well as an additional check in the amount of $5,000.00, but have otherwise failed or refused to return the remainder of Plaintiffs' money, despite several requests by Mr. Olson and promises to that effect made by Mr. Anzalone.

31.     At present, there remains the total amount of $415,882.46 from Plaintiffs' accounts being held by the Defendants without permission.

32.     In addition, as a result of the actions of the Defendants, Plaintiff, Mr. Olson, has incurred an indebtedness to the United States Internal Revenue Service in the amount of $19,841.00 as penalties resulting from early withdrawals from IRA accounts. In attempting to induce Mr. Olson to enter into the relationship with the Defendants, the Defendants represented that the subject IRA accounts would be handled (for purposes of using the money held in Mr. Olson's IRA accounts to fund investments with the Defendants) by Defendants' accountants and that no penalties would result from the handling of Mr. Olson's IRA accounts. After Mr. Olson notified the Defendants that the transactions handled by Defendants' accountants have resulted in penalties, the Defendants agreed to reimburse Mr. Olson for. See, Exhibit "F".

33.     Further, the Defendants have agreed to be responsible for any movement in the silver market (the value of silver) from March 30, 2011 until the money is received by Plaintiffs with respect to all silver units held in Plaintiffs' various accounts. See, March 30, 2011 email from Defendant, Anzalone, to Plaintiff – Exhibit "G".

34.     As of that day, the value of Plaintiffs' silver positions was $35.21. The value of Plaintiffs' silver positions on the day those positions were sold was $48.48. The margin between the two values was, therefore, $13.27 per silver unit. Plaintiffs held 32,484 silver units. Therefore, the total amount in realized profits which was due to Plaintiffs, but the Defendants'

have kept is $431,062.88, in addition to the $435,723.46 already owed to Plaintiffs (as stated in paragraphs 31-32, above.

35. On June 2, 2011, a demand letter, pursuant to Fla. Stat. §772.11 was sent via overnight delivery to the Defendants, requesting the return of Plaintiffs' money. However, after thirty (30) days, that demand has not been met as well. See, Exhibit "H".

36. As a result of Defendants' actions and/or failure to act, in obtaining Plaintiffs' money with false promises, and in failing to return the money when requested/demanded, Plaintiffs have been required to secure the services of Lubell & Rosen, LLC, and are required to pay the reasonable attorney's fees and costs incurred in pursuing this lawsuit.

37. All conditions precedent to filing this lawsuit have either been satisfied or waived.

### COUNT I – Violation of 7 U.S.C. §§6b and 6o
(Against Defendants Liberty, Anzalone, and Schuler)

Plaintiffs adopt and reallege all allegations contained in paragraphs 1-37, above, as if fully stated herein.

38. This is a count for violation of 7 U.S.C. §§6b and 6o.

39. As stated above, Defendants, Liberty, Anzalone, and Schuler entered into contracts for sale of precious metals for future delivery to Plaintiffs in an attempt to cheat or defraud Plaintiffs off their money.

40. In the process of inducing Plaintiffs to enter into the agreements with the Defendants, the Defendants willfully made or caused to be made to Plaintiffs false statements, to wit: that Plaintiffs' money would be returned within a reasonable time upon Plaintiffs' request for liquidation.

41. Further, in the process of inducing Plaintiffs to enter into the agreements with the Defendants, the Defendants willfully employed a device or a scheme, deceived or attempted to

deceive the Plaintiffs through false promises to return the money within a reasonable time upon Plaintiffs' request for liquidation and have further continued to string Plaintiffs along for over six months through false excuses and promises after the Plaintiffs had requested the disposition or execution of the liquidation order.

42.     Plaintiffs relied upon the false representations of Defendant, Anzalone, when they decided to invest with the Defendants. Further, Plaintiffs relied upon the false representations of Defendants, Anzalone and Schuler, which strung them along after Plaintiffs had demanded the return of their money.

43.     Plaintiffs' reliance upon the various representations made by Defendants, Anzalone and Schuler was reasonable.

44.     As a result of Defendants, Anzalone and Schuler's misrepresentations, fraud, and willful violations of 7 U.S.C. §§6b and 6o, Plaintiffs have suffered damages in that the money deposited with the Defendants has not been returned in full; and profits that should have been realized were not.

45.     Defendants, Anzalone and Schuler, acted within the scope of their employment and as agents of Liberty in making the misrepresentations, and in committing fraud and willful violations of 7 U.S.C. §§6b and 6o, which benefitted Liberty. Therefore, pursuant to 7 U.S.C. §2 and 17 C.F.R. §1.2, Liberty, as principal, is jointly liable for Defendants, Anzalone and Schuler's violations of 7 U.S.C. §§6b and 6o.

46.     Further, Defendant, Schuler, willfully aided, abetted, counseled, commanded, induced, or procured the commission of, a violation of 7 U.S.C. §§6b and 6o by Defendant, Anzalone, or acted in combination or concert with Defendant, Anzalone, in any such violation, or willfully caused an act to be done or omitted (by Anzalone) which if directly performed or

omitted by him or another would be a violation of 7 U.S.C. §§6b and 6o. Therefore, under 7 U.S.C. §13c(a), Defendant, Schuler, as principal, may be held responsible for such actions or omissions as a principal.

47.     Finally, Defendant, Schuler, as the principal of Liberty directly or indirectly controlled the acts of Defendant, Anzalone, which violated 7 U.S.C. §§6b and 6o and did not act in good faith, or otherwise knowingly induced directly or indirectly the acts of Defendant, Anzalone. Therefore, pursuant to 7 U.S.C. §13c(b), Defendant, Schuler, may be held liable for Defendant, Anzalone's violations of 7 U.S.C. §§6b and 6o.

WHEREFORE, Plaintiffs request judgment against Defendants, Liberty, Anzalone, and Schuler for violation of 7 U.S.C. §§6b and 6o, including the return of all principal and unrealized profit, as well as disgorgement of all profits made by the Defendants using Plaintiffs' money, cost, and attorney's fees, and any such other relief as this Court deems just and proper.

## COUNT II – Breach of Contract
### (Against Defendant Liberty)

Plaintiffs adopt and reallege all allegations contained in paragraphs 1-37, above, as if fully stated herein.

48.     This is a count for breach of contract against Defendant, Liberty.

49.     On or about August 12, 2010, Plaintiffs and Defendant, Liberty (through its owner/officer – Anzalone), entered into an agreement by which the Plaintiffs agreed to transfer money to the Defendant for purposes of investment and the Defendant agreed to invest Plaintiffs' money, to provide all information related to Plaintiffs' money on a timely and continuous basis, and, most importantly, to return the money upon request with all accumulated profits less the service charge of three percent.

50.    Plaintiffs have performed their obligations under the agreement in full, by wiring their obligation $356,775.64 in total investment money to be used as investment and by paying the three percent service charge on the investments, as requested.

51.    Defendant, however, as indicated above, materially breached the agreement by failing to provide adequate documentation for the investments made and Plaintiff's money, and by failing to liquidate and return the money, with all accumulated profits when requested.

52.    To date, despite several requests, the Defendant returned the sum of $200,000.00 only.

53.    As a result of Defendant's material breaches, the Plaintiffs have been damaged.

54.    Presently, the Defendant still owes Plaintiffs the total amount of $415,882.46 (as of March 30, 2011), the additional amount of $431,062.88 that represents that margin in value of Plaintiffs' investments between March 30, 2011 and the present (as agreed to by Defendant's representative), and the amount of $19,841.00 on the United States Internal Revenue Service indebtedness, which the Defendant agreed to be responsible for – for a total of $866,786.34.

55.    The amount owed to Plaintiffs is liquidated; therefore, prejudgment interest is appropriate.

WHEREFORE, Plaintiffs request judgment in their favor against Defendant, Liberty, for all damages incurred due to Defendant's breaches, plus prejudgment interest, costs, and any other relief this Court deems just and proper.

### COUNT III – Fraudulent Inducement
(Against Defendant Anzalone)

Plaintiffs adopt and reallege all allegations contained in paragraphs 1-37, above, as if fully stated herein.

56.    This is a count for Fraudulent Inducement against Defendant, Anzalone.

57.   At all material times Defendant, Anzalone, was an owner and officer of Defendant, Liberty.

58.   As stated above, in an attempt to induce Plaintiffs to enter into the agreement with Liberty and to wire their funds to Liberty, Defendant, Anazalone, represented to Plaintiffs that Liberty would invest their money, that information regarding the money and the accounts it was in would be provided in a timely and continuously manner, and most importantly, that, upon Plaintiffs' request, the accounts would be liquidated and the money returned to them.

59.   Defendant, Anzalone, knew or should have known that these representations were false and that the money would not be returned to the Plaintiffs.

60.   In fact, these representations were false as evident by Defendant, Liberty's failure to return Plaintiffs' money upon request.

61.   Defendant, Anzalone, intended his false statements to induce Plaintiffs' reliance prior to agreeing to wire his company $431,775.64 in total investment money.

62.   Plaintiffs did, in fact, rely upon Defendant, Anzalone's false representation that the money would be returned before agreeing to wire his company $431,775.64 in total investment money.

63.   Plaintiffs' suffered a detriment as a result of their reliance on Defendant's promise to return the money prior to agreeing to wire to Defendant's company $431,775.64 in total investment money.

64.   This Paragraph is reserved for the addition of a claim for punitive damages in the future upon further motion.

WHEREFORE, Plaintiffs request judgment in their favor against Defendant, Anzalone, judgment in for all damages incurred due to Defendant's fraudulent inducement, plus prejudgment interest, costs, and any other relief this Court deems just and proper.

## COUNT IV– Constructive Trust
(Against Defendant Liberty)

Plaintiffs adopt and reallege all allegations contained in paragraphs 1-37, above, as if fully stated herein.

65.     This is a count for constructive trust against Liberty.

66.     As stated above, Defendant, Liberty (through its owner/officer – Anzalone), promised to safe keep Plaintiffs' investment money and to return it, with accumulated profits (if any) when requested and charged three percent service fee for those services.

67.     Defendant and Plaintiffs' relationship was a confidential relationship, as the Plaintiffs relied upon Defendant's represented knowledge and experience for handling Plaintiffs' money and investments, and Defendant's promises were made in that confidence.

68.     Plaintiffs relied upon Defendant's promise to invest and return the money upon request, when they agreed to wire to Defendant's company $431,775.64 in total investment money.

69.     Defendant, Liberty, breached the promise to return the funds provided by Plaintiffs with profits (if any), despite several requests, and has been unjustly enriched as a result of that breach.

WHEREFORE, Plaintiffs' request that this Honorable Court impose a constructive trust on all Plaintiff's funds held inappropriately by the Defendant.

## COUNT V – Breach of Fiduciary Duty
(Against Defendant Liberty)

Plaintiffs adopt and reallege all allegations contained in paragraphs 1-36, above, as if fully stated herein.

70.     This is a count for breach of fiduciary duty against Liberty.

71.     As Plaintiffs' investment broker, Liberty owed Plaintiffs the fiduciary duties of loyalty and care, which included the duty to perform the Plaintiffs' orders promptly in a manner best suited to serve Plaintiffs' interests, the duty to inform the customer of the risks involved in purchasing or selling a particular security, and the duty to recommend investments only after studying it sufficiently to become informed as to its nature, price, and financial prognosis.

72.     Liberty breached its duty of loyalty and care, by failing to liquidate Plaintiffs' accounts as requested by Plaintiffs and by failing to return all of Plaintiffs' funds (including all profits, if any) to Plaintiffs.

73.     Further, Liberty breached its duty of care by failing to advise the Plaintiffs of the tax ramifications of their proposed investments.

74.     As a proximate result of Defendant's breaches of its fiduciary duties, Plaintiffs suffered damages, to wit: their funds, including profits (if any) have not been returned, and the Plaintiff's have accrued a $19,841.00 penalty by the United States Internal Revenue Service indebtedness for the investment activities of the Defendant.

75.     This Paragraph is reserved for the addition of a claim for punitive damages in the future upon further motion.

WHEREFORE, Plaintiffs demand judgment against Liberty for all damages incurred as a result of Liberty's breach of its fiduciary duties, including interest, costs, and any such other relief as this Court deems proper.

## COUNT VI – Conversion
### (Against Defendant Liberty)

Plaintiffs adopt and reallege all allegations contained in paragraphs 1-37, above, as if fully stated herein.

76.     This is a count for conversion against Liberty.

77.     As stated above, Plaintiffs transferred money to Defendant for investment.

78.     Plaintiffs were entitled to the return of the money upon request for liquidation of their investment accounts, as it they were the owners of that money.

79.     The Defendant has kept Plaintiffs' money (including all profits to which they were entitled) after Plaintiffs' requested its return, despite not having any ownership interest in that money.

80.     By refusing to return Plaintiffs money (including all profits to which they were entitled), the Defendant intended to, and, indeed, deprived Plaintiffs of their property permanently or temporarily.

81.     Upon information and belief, Defendants, Schuler and Anzalone, intend to issue an IPO (initial public offering) for Liberty in the immediate future, which requires them to demonstrate that Liberty possesses strong financial foundation and may have used the money converted from Plaintiffs for that purpose.

82.     The money converted by the Defendant is subject to clear identification, as it was transferred to the Defendant in six identifiable wire transfers and was to be kept in dedicated accounts for the benefit of the Plaintiffs and not in Defendant's operating account(s).

83.     This Paragraph is reserved for the addition of a claim for punitive damages in the future upon further motion.

WHEREFORE, Plaintiffs demand judgment against Liberty for converting Plaintiffs' money, including prejudgment interest, costs, and any such other relief as this Court deems proper.

## COUNT VII – Civil Theft under Fla. Stat. §772.11
### (Against Defendant Liberty)

Plaintiffs adopt and reallege all allegations contained in paragraphs 1-37, above, as if fully stated herein.

84.     This is a count for civil theft against Liberty.

85.     As alleged above, the Defendant has knowingly obtained, used, or endeavored to obtain or to use, the property of Plaintiffs with the intent to, either temporarily or permanently deprive the Plaintiffs of their right to their money or a benefit therefrom; or appropriated Plaintiffs' money to its own use or to the use of its principals, who were not entitled thereto.

86.     Upon information and belief, Defendants, Schuler and Anzalone, intend to issue an IPO (initial public offering) for Liberty in the immediate future, which requires them to demonstrate that Liberty possesses strong financial foundation and may have used the money wrongfully taken from Plaintiffs for that purpose.

87.     Defendant's actions qualify as "theft" under, and in violation of, Fla. Stat. §812.014.

88.     As alleged above, the Defendant obtained Plaintiffs' money by fraud, willful misrepresentation of a future act (the prompt return of the money), or false promise (to return the money).

89.     Pursuant to the requirements of Fla. Stat. §772.11(1), on June 2, 2011, Plaintiffs sent a demand letter to the Defendant, demanding the return of all the money owed to them and wrongfully held by the Defendant. See, Exhibit "H".

90.     Through the date of filing of this Complaint, and more than 30 days since the

demand letter was received by the Defendant, the Defendant has failed to return the money owed

to Plaintiffs, despite the demand letter.

91.     Plaintiffs are, therefore, entitled to treble damages, their attorney's fees, and costs,

as provided by Fla. Stat. §772.11.

WHEREFORE, Plaintiffs demand judgment against Liberty for treble their damages, all

attorney's fees and costs, and any such further relief as this Court deems proper.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all issues so triable.

Respectfully submitted this ____ day of October, 2011.

> LUBELL & ROSEN, LLC
> *Attorneys for Plaintiffs*
> 200 S. Andrews Ave, Suite 901
> Ft. Lauderdale, Florida 33301
> Phone: (954) 755-3425
> Fax: (954) 755-2993
> e-mail:    adi@lubellrosen.com
>            maa@lubellrosen.com
>
> By /s/ Adi Amit_____
>     Adi Amit, Esquire
>     Florida Bar No.: 35257
>     Marshall A. Adams, Esquire
>     Florida Bar No.: 712426

# EXHIBIT A

# LIBERTY INTERNATIONAL
# FINANCIAL SERVICES, INC.

## CLIENT INFORMATION

| Last Name | First | M.I. | Date |
|---|---|---|---|
| OLSON | MAUREEN | C | 8-12-10 |

**Street Address** _____ **Apartment/Unit #** _____

**City** _____ **State** U _____ **ZIP** _____

**Home Phone #** _____ **Cell Phone #** 2 _____ **Business #** _____

**Fax #** _____ **Email Address** _____

**Date of Birth** _____ **Social Security #** _____ **Maiden Name** _____

In order to determine the suitability of an investment in physical commodities- an area that includes both a long-term nature and risks associated with the purchase; please fill out the information below to the best of your ability.

**What is your marital status?**   Single ☐   Married ☒   Divorced ☐   Separated ☐   Widowed ☐

**Current Occupation** St _____ **Length of Time in Current Position** 6 _____ **Current Income** _____

**Current NET Worth** _____ **Current Liquid Assets** _____ **What is your stock (equity) portfolio's approximate current value?** $1,800

**Have you ever invested in commodities?**  YES ☒  NO ☐  If yes, when and what? _____

**Have you ever invested in mutual funds?**  YES ☒  NO ☐  If yes, when and what?   FUND A _____

**Have you ever invested in stocks, bonds, futures or options?**  YES ☒  NO ☐  If yes, when and what?   2006 _____

I fully acknowledge that the answers given are to the best of my knowledge and ability. Furthermore, no person associated with, or employed by Liberty International Financial Services, Inc. has prompted me to answer the questions in anyway but truthfully.

X _Maureen Olson_   Date 8-12-10
**Client Signature**

MAUREEN OLSON
**Printed Name**



## RISK DISCLOSURE

The ownership of physical precious metals for investment purposes can be made through various vehicles. The following represents some, but not all, areas of risk and costs that are inherent with various methods of ownership of physical precious metals, which require consideration and evaluation by prospective investors. Buyer acknowledges that each transaction is a spot metals transaction and not a futures contract. Buyer has the intent, but not the obligation to take delivery of the metals. The customer chooses whether to pay in full or to finance the purchase, but must pay in full if they wish to take delivery of the metals.

**Market Fluctuations and Risk of Loss**

As with any investment, the price of precious metals changes daily and there are absolutely no guarantees that the purchase price will ever be exceeded in order to provide the opportunity of a higher selling price. Upon entering the market, the risk of loss is the client's. Only those individuals who are capable of sustaining a financial loss should consider purchasing precious metal investments.

**Stagnation and Opportunity Cost**

Investment dollars put into physical precious metals can only be converted back to cash by selling. Therefore, there is a cost, which is the loss of interest income, the price must move, greater than the percentage of interest income forfeited.

**Broker fees**

Brokerage firms are in business to make money by providing their clients with various methods of owning physical precious metal products and the services related to these specific markets. In order for a precious metals purchase to become profitable, the price must increase sufficiently enough to exceed the total cost of the product, including broker's fees. This is commonly referred to as "the break-even price." We charge a commission up to and equal to ████ of the total value of metal purchased.

**Delivery Charges**

Physical precious metals can either be delivered directly to the client's designated point of delivery or to a recognized depository, which provides insured non-segregated storage. Most home deliveries take place via drop shipment from recognized depositories via registered insured mail and are subject to handling fees, postage, and insurance. In order to determine these fees, consult with your broker.

**Financing**

Most recognized depositories also provide financing services which allow clients to borrow up to 80% of the value of their precious metals products which are also in non-segregated depository facilities of the lending institution. Interest rate and various fees will vary from one institution to another. Consult your broker about all cost ant fees associated with financing investments. All clients that wish to make use of financing must understand the following:
1) Current financing rates are 5.5% over prime.
2) The lending institutions also reserve the right to liquidate all, or part, of the product acting as collateral for the loan without any prior notice to the client.
3) The ongoing cost of borrowing (interest charges and fees) will increase "the break-even price" of the product purchased or that is being used to support collateral for the loan. Therefore, precious metal purchased with the use of financing must increase in price sufficiently enough to offset the cost of borrowing before selling the product can generate an actual profit.
4) Increased risk is created by debt obligation of borrower to the lending institution. There are no guarantees that clients will be able to resell their precious metals for an amount equal to, or greater than, the unpaid balance due to the lending institution and the borrower is responsible for any and all deficiencies. It is

- 1 -

therefore possible to lose or gain more than the amount of the purchaser's initial investment when financing is used.

**Liquidity**

Precious metal owners should note that on any given day, commodity exchange trading in categories of precious metals might be restricted, suspended or halted entirely for any number of reasons. When such situations occur, it may be difficult or impossible to sell physical precious metals or to know when the exchange market will resume activity. Although the company makes every effort as a broker dealer to provide its clients with the ability to purchase and sell, it cannot guarantee access to markets for either purpose. Additionally, product purchased from or through the firm when sold to any third party, may be required by that third party to subject the precious metals to inspection and assay at the owner's expense.

**Taxes**

As tax laws are constantly changing, we suggest that you consult your tax advisor as to how current tax laws may affect the outcome of contemplated purchases or sales before entering into any agreement to purchase precious metals. Company brokers will be available to discuss the type of transaction under consideration with the tax advisors of our clients.

**Brokers**

The brokers of the company are Independent Contractors to the company. Therefore, the company assumes no responsibility to the customer for recommendations of the purchase or sale of precious metals made by the brokers, or their regulatory history and from time to time may inadvertently retain a contractor who has had a past regulatory problem. The customer alone is responsible for all decisions based on representation or recommendations made by the broker of the company.

**Arbitration With Governing Law and Venue**

The parties agree that any disputes relating to this account will be submitted to binding arbitration. The venue for any such arbitration shall be exclusive in the State of Florida and all parties agree that any arbitration award entered shall be binding and convertible to a State of Florida judgment subject to the laws of the State of Florida and further subject to any modifications there of permissible there under. The parties here by accordingly waive their right to any other remedy or to proceed with any court actions and further hereby waive jurisdiction and venue.
This account and the activities contemplated here under shall be governed by the substantive and procedural laws of Broward County, the State of Florida without respect to Florida conflict of law, rules and venue of any dispute resolution shall like wise be in Broward County, the State of Florida without respect to Florida conflict of law rules.

**Signature and Statement of Understanding**

**I have read the risk disclosure document related to investing in precious metals.**

MAUREEN OLSON
~~Maureen~~

Print Name                                          Print Name

x Maureen Olson                                     x
Signature                                           Signature

8-12-10
Date                                                Date

- 2 -

# LIBERTY INTERNATIONAL
# FINANCIAL SERVICES, INC.

## CLIENT INFORMATION

| Last Name | First | M.I. | Date |
|---|---|---|---|
| OLSON | WILLIAM | E | 8-12-10 |

| Street Address | Apartment/Unit # |
|---|---|
| | |

| City | State | ZIP |
|---|---|---|
| | | |

| Home Phone # | Cell Phone # | Business # |
|---|---|---|
| | 4 | 8 |

| Fax # | Email Address |
|---|---|
| | |

| Date of Birth | Social Security # | Maiden Name |
|---|---|---|
| | | |

In order to determine the suitability of an investment in physical commodities- an area that includes both a long-term nature and risks associated with the purchase; please fill out the information below to the best of your ability.

What is your marital status?    Single ☐    Married ☒    Divorced ☐    Separated ☐    Widowed ☐

| Current Occupation | Length of Time in Current Position | Current Income |
|---|---|---|
| | | |

| Current NET Worth | Current Liquid Assets | What is your stock (equity) portfolio's approximate current value? |
|---|---|---|
| $ | $ | $ |

Have you ever invested in commodities?    YES ☒   NO ☐   If yes, when and what?

Have you ever invested in mutual funds?    YES ☐   NO ☐   If yes, when and what?

Have you ever invested in stocks, bonds, futures or options?    YES ☒   NO ☐   If yes, when and what?

I fully acknowledge that the answers given are to the best of my knowledge and ability. Furthermore, no person associated with, or employed by Liberty International Financial Services, Inc. has prompted me to answer the questions in anyway but truthfully.

X _William Olson_    Date 8-12-10
Client Signature

WILLIAM OLSON
Printed Name



# LIBERTY INTERNATIONAL FINANCIAL SERVICES, INC.

## RISK DISCLOSURE

The ownership of physical precious metals for investment purposes can be made through various vehicles. The following represents some, but not all, areas of risk and costs that are inherent with various methods of ownership of physical precious metals, which require consideration and evaluation by prospective investors. Buyer acknowledges that each transaction is a spot metals transaction and not a futures contract. Buyer has the intent, but not the obligation to take delivery of the metals. The customer chooses whether to pay in full or to finance the purchase, but must pay in full if they wish to take delivery of the metals.

### Market Fluctuations and Risk of Loss

As with any investment, the price of precious metals changes daily and there are absolutely no guarantees that the purchase price will ever be exceeded in order to provide the opportunity of a higher selling price. Upon entering the market, the risk of loss is the client's. Only those individuals who are capable of sustaining a financial loss should consider purchasing precious metal investments.

### Stagnation and Opportunity Cost

Investment dollars put into physical precious metals can only be converted back to cash by selling. Therefore, there is a cost, which is the loss of interest income, the price must move, greater than the percentage of interest income forfeited.

### Broker fees

Brokerage firms are in business to make money by providing their clients with various methods of owning physical precious metal products and the services related to these specific markets. In order for a precious metals purchase to become profitable, the price must increase sufficiently enough to exceed the total cost of the product, including broker's fees. This is commonly referred to as "the break-even price." We charge a commission up to and equal to ▓▓▓ of the total value of metal purchased.

### Delivery Charges   3⅜% *[handwritten]*

Physical precious metals can either be delivered directly to the client's designated point of delivery or to a recognized depository, which provides insured non-segregated storage. Most home deliveries take place via drop shipment from recognized depositories via registered insured mail and are subject to handling fees, postage, and insurance. In order to determine these fees, consult with your broker.

### Financing

Most recognized depositories also provide financing services which allow clients to borrow up to 80% of the value of their precious metals products which are also in non-segregated depository facilities of the lending institution. Interest rate and various fees will vary from one institution to another. Consult your broker about all cost ant fees associated with financing investments. All clients that wish to make use of financing must understand the following:
1) Current financing rates are 5.5% over prime.
2) The lending institutions also reserve the right to liquidate all, or part, of the product acting as collateral for the loan without any prior notice to the client.
3) The ongoing cost of borrowing (interest charges and fees) will increase "the break-even price" of the product purchased or that is being used to support collateral for the loan. Therefore, precious metal purchased with the use of financing must increase in price sufficiently enough to offset the cost of borrowing before selling the product can generate an actual profit.
4) Increased risk is created by debt obligation of borrower to the lending institution. There are no guarantees that clients will be able to resell their precious metals for an amount equal to, or greater than, the unpaid balance due to the lending institution and the borrower is responsible for any and all deficiencies. It is

-1-

therefore possible to lose or gain more than the amount of the purchaser's initial investment when financing is used.

## Liquidity

Precious metal owners should note that on any given day, commodity exchange trading in categories of precious metals might be restricted, suspended or halted entirely for any number of reasons. When such situations occur, it may be difficult or impossible to sell physical precious metals or to know when the exchange market will resume activity. Although the company makes every effort as a broker dealer to provide its clients with the ability to purchase and sell, it cannot guarantee access to markets for either purpose. Additionally, product purchased from or through the firm when sold to any third party, may be required by that third party to subject the precious metals to inspection and assay at the owner's expense.

## Taxes

As tax laws are constantly changing, we suggest that you consult your tax advisor as to how current tax laws may affect the outcome of contemplated purchases or sales before entering into any agreement to purchase precious metals. Company brokers will be available to discuss the type of transaction under consideration with the tax advisors of our clients.

## Brokers

The brokers of the company are Independent Contractors to the company. Therefore, the company assumes no responsibility to the customer for recommendations of the purchase or sale of precious metals made by the brokers, or their regulatory history and from time to time may inadvertently retain a contractor who has had a past regulatory problem. The customer alone is responsible for all decisions based on representation or recommendations made by the broker of the company.

## Arbitration With Governing Law and Venue

The parties agree that any disputes relating to this account will be submitted to binding arbitration. The venue for any such arbitration shall be exclusive in the State of Florida and all parties agree that any arbitration award entered shall be binding and convertible to a State of Florida judgment subject to the laws of the State of Florida and further subject to any modifications there of permissible there under. The parties here by accordingly waive their right to any other remedy or to proceed with any court actions and further hereby waive jurisdiction and venue.
This account and the activities contemplated here under shall be governed by the substantive and procedural laws of Broward County, the State of Florida without respect to Florida conflict of law, rules and venue of any dispute resolution shall like wise be in Broward County, the State of Florida without respect to Florida conflict of law rules.

## Signature and Statement of Understanding

**I have read the risk disclosure document related to investing in precious metals.**

WILLIAM  OLSON
Print Name

x _William Ol___
Signature

8-12-10
Date

Print Name

x
Signature

Date

- 2 -

# EXHIBIT B



## ACCOUNT STATEMENT

**Liberty International Financial Services, Inc.**
6301 NW 5th Way Suite # 5000
Fort Lauderdale, FL 33309

| | |
|---|---|
| Statement Date: | 03/29/2011 |
| | Page 1 of 1 |
| Beginning Period: | 12/27/2010 |
| Ending Period: | 02/22/2011 |
| Account Number: | 1275 |

### Client Information
William Olson /

# SELL OUT

### ACCOUNT ASSET PORTFOLIO



- GOLD
- SILVER
- PALLADIUM
- PLATINUM

#### ACCOUNT SUMMARY

| Market Value | Loan Balance | Equity | Cash Balance |
|---|---|---|---|
| $15,318.00 | N/A | $15,318.00 | $19.78 |

| GOLD | Market Price | Unit | Market Value | Loan Balance | Equity | Cash Balance |
|---|---|---|---|---|---|---|
| Prior Balance | | | | | | |
| Ending Balance | | | | | | |
| Net Change | | | | | | |

| SILVER | Market Price | Unit | Market Value | Loan Balance | Equity | Cash Balance |
|---|---|---|---|---|---|---|
| Prior Balance | | | | | | |
| Ending Balance | $34.50 | 444 | $15,318.00 | N/A | $15,318.00 | $0.00 |
| Net Change | | | | | | |

| PALLADIUM | Market Price | Unit | Market Value | Loan Balance | Equity | Cash Balance |
|---|---|---|---|---|---|---|
| Prior Balance | | | | | | |
| Ending Balance | | | | | | |
| Net Change | | | | | | |

| PLATINUM | Market Price | Unit | Market Value | Loan Balance | Equity | Cash Balance |
|---|---|---|---|---|---|---|
| Prior Balance | | | | | | |
| Ending Balance | | | | | | |
| Net Change | | | | | | |



LIBERTY INTERNATIONAL
FINANCIAL SERVICES, INC.

Phone: 954-202-9491      Fax: 954-202-9499
www.LIFS.info

# EXHIBIT C



## ACCOUNT STATEMENT

**Liberty International Financial Services, Inc.**

6301 NW 5th Way Suite # 5000
Fort Lauderdale, FL 33309

| | |
|---|---|
| Statement Date: | 03/29/2011 |
| | Page 1 of 1 |
| Beginning Period: | 12/27/2010 |
| Ending Period: | 02/22/2011 |
| Account Number: | 1275 |

### Client Information

Maureen Olson / E

# SELL OUT

## ACCOUNT ASSET PORTFOLIO



- GOLD
- SILVER
- PALLADIUM
- PLATINUM

### ACCOUNT SUMMARY

| Market Value | Loan Balance | Equity | Cash Balance |
|---|---|---|---|
| $104,880.00 | N/A | $104,880.00 | $0.00 |

| GOLD | Market Price | Unit | Market Value | Loan Balance | Equity | Cash Balance |
|---|---|---|---|---|---|---|
| Prior Balance | | | | | | |
| Ending Balance | | | | | | |
| Net Change | | | | | | |

| SILVER | Market Price | Unit | Market Value | Loan Balance | Equity | Cash Balance |
|---|---|---|---|---|---|---|
| Ending Balance | $34.50 | 3,040 | $104,880.00 | N/A | $104,880.00 | $0.00 |
| Net Change | | | | | | |

| PALLADIUM | Market Price | Unit | Market Value | Loan Balance | Equity | Cash Balance |
|---|---|---|---|---|---|---|
| Prior Balance | | | | | | |
| Ending Balance | | | | | | |
| Net Change | | | | | | |

| PLATINUM | Market Price | Unit | Market Value | Loan Balance | Equity | Cash Balance |
|---|---|---|---|---|---|---|
| Prior Balance | | | | | | |
| Ending Balance | | | | | | |
| Net Change | | | | | | |



LIBERTY INTERNATIONAL
FINANCIAL SERVICES, INC.

Phone: 954-202-9491      Fax: 954-202-9499
www.LIFS.info

# EXHIBIT D



# ACCOUNT STATEMENT

| | |
|---|---|
| Statement Date: | 04/27/2011 |

**Liberty International Financial Services, Inc.**
6301 NW 5th Way Suite # 5000
Fort Lauderdale, FL 33309

| | |
|---|---|
| | Page 1 of 1 |
| Beginning Period: | 02/22/2011 |
| Ending Period: | 03/29/2011 |
| Account Number: | 1275 |

## Client Information
The Wright Living Trust

# SELL OUT

## ACCOUNT ASSET PORTFOLIO



- GOLD
- SILVER
- PALLADIUM
- PLATINUM

### ACCOUNT SUMMARY

| Market Value | Loan Balance | Equity | Cash Balance |
|---|---|---|---|
| $585,600.00 | $378,036.58 | $207,563.42 | $0.00 |

| GOLD | Market Price | Unit | Market Value | Loan Balance | Equity | Cash Balance |
|---|---|---|---|---|---|---|
| Prior Balance | | | | | | |
| Ending Balance | | | | | | |
| Net Change | | | | | | |

| SILVER | Market Price | Unit | Market Value | Loan Balance | Equity | Cash Balance |
|---|---|---|---|---|---|---|
| Prior Balance | | | | | | |
| Ending Balance | $36.60 | 16,000 | $585,600.00 | $378,036.58 | $207,563.42 | $0.00 |
| Net Change | | | | | | |

| PALLADIUM | Market Price | Unit | Market Value | Loan Balance | Equity | Cash Balance |
|---|---|---|---|---|---|---|
| Prior Balance | | | | | | |
| Ending Balance | | | | | | |
| Net Change | | | | | | |

| PLATINUM | Market Price | Unit | Market Value | Loan Balance | Equity | Cash Balance |
|---|---|---|---|---|---|---|
| Prior Balance | | | | | | |
| Ending Balance | | | | | | |
| Net Change | | | | | | |



LIBERTY INTERNATIONAL
FINANCIAL SERVICES, INC.

Phone: 954-202-9491    Fax: 954-202-9499
www.LIFS.info

# EXHIBIT E

# ACCOUNT STATEMENT



**Liberty International Financial Services, Inc.**
6301 NW 5th Way Suite # 5000
Fort Lauderdale, FL 33309

| | |
|---|---|
| Statement Date: | 04/27/2011 |
| | Page 1 of 1 |
| Beginning Period: | 02/22/2011 |
| Ending Period: | 04/05/2011 |
| Account Number: | 1275 |

## Client Information
Maureen & William Olson

# SELL OUT

### ACCOUNT ASSET PORTFOLIO



- GOLD
- SILVER
- PALLADIUM
- PLATINUM

### ACCOUNT SUMMARY

| Market Value | Loan Balance | Equity | Cash Balance |
|---|---|---|---|
| $494,000.00 | $310,878.96 | $183,121.04 | $0.00 |

| GOLD | Market Price | Unit | Market Value | Loan Balance | Equity | Cash Balance |
|---|---|---|---|---|---|---|
| Prior Balance | | | | | | |
| Ending Balance | | | | | | |
| Net Change | | | | | | |

| SILVER | Market Price | Unit | Market Value | Loan Balance | Equity | Cash Balance |
|---|---|---|---|---|---|---|
| Prior Balance | | | | | | |
| Ending Balance | $38.00 | 13,000 | $494,000.00 | $310,878.96 | $183,121.04 | $0.00 |
| Net Change | | | | | | |

| PALLADIUM | Market Price | Unit | Market Value | Loan Balance | Equity | Cash Balance |
|---|---|---|---|---|---|---|
| Prior Balance | | | | | | |
| Ending Balance | | | | | | |
| Net Change | | | | | | |

| PLATINUM | Market Price | Unit | Market Value | Loan Balance | Equity | Cash Balance |
|---|---|---|---|---|---|---|
| Prior Balance | | | | | | |
| Ending Balance | | | | | | |
| Net Change | | | | | | |



LIBERTY INTERNATIONAL
FINANCIAL SERVICES, INC.

Phone: 954-202-9491     Fax: 954-202-9499
www.LIFS.info

# EXHIBIT F

## Adi Amit

| | |
|---|---|
| **From:** | Christopher Anzalone [Christopher.Anzalone@lifs.info] |
| **Sent:** | Monday, March 21, 2011 5:25 PM |
| **To:** | billolson@legacytrends.com |
| **Cc:** | Jeffrey Schuler; Ashley Herrington |
| **Subject:** | Accounts |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Bill,

I notified Jeff and Ashley via email of your desire to liquidate all accounts. The request has been made to our clearing firm to send us all proceeds from your accounts and all monies will be sent to you once we receive them from overseas. In response to the letter from your accountants regarding the IRA I received the following response from Mr. Schuler. If you have any questions or concerns please feel free to contact me. I feel it is unfortunate that you're leaving our family of clients but wish you best on all future endeavors.

Respectfully,

*Christopher Anzalone*
President/CEO
Liberty International Financial Services, Inc.
http://www.lifs.info

mailto:christopher.anzalone@lifs.info
954-202-9491



LIBERTY INTERNATIONAL
FINANCIAL SERVICES, INC.

**Confidentiality Warning**
This e-mail may contain privileged and/or confidential information for which the sender does not waive any related rights and obligations. It is intended for the named recipient (s) only. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized.  If you have received this e-mail in error please advise (by return e-mail) immediately and please do not disclose the contents to anyone or make copies.

**From:** Jeffrey Schuler
**Sent:** Monday, March 21, 2011 4:45 PM
**To:** Christopher Anzalone
**Subject:** IRA situation

Chris,

9/28/2011

I do not care one whit what any accountant or Entrust has to say. I am not prepaying a "possible" fee. Nor, am I paying someone's taxes, especially before the fact.  My stance, has always been that we at Liberty stand behind our policies and procedures. IF, after filing taxes and the forms provided the IRS says fees and or penalties are owed, we will pay them. Not beforehand, not on anyone's word. Our attorneys are the best, and most costly around and their opinion is good enough for me. Our guarantee is not valid on assumed costs, only on actual damages occurred.

Jeff

*Jeffrey M. Schuler*
*Executive Vice President, COO*
*Liberty International Financial Services, Inc.*
*954-202-9491  (office)*

# EXHIBIT G

## Bill Olson

| | |
|---|---|
| **From:** | Christopher Anzalone [Christopher.Anzalone@lifs.info] |
| **Sent:** | Wednesday, March 30, 2011 10:47 AM |
| **To:** | billolson@legacytrends.com |
| **Subject:** | Our Agreement |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |
| **Attachments:** | image001.png; oledata.mso |

Bill,

Just to further clarify our agreement, as per Jeff, we will be responsible for any movements in the silver market from this point forward since now is when you should have been receiving your funds from us. If you have any questions please feel free to email me. Ill be out of the office most of the day since my sister will only be in town until tomorrow. Jeff is finalizing your accounting and you will definitively be receiving your real estate dividend fund into the second week of April. Also, as far as liquidation we do have an instrument expiring within the next few weeks and will be able to utilize that to purchase your position in the real estate fund. Once again Bill, thank you for your understanding and patience.

*Christopher Anzalone*
President/CEO
Liberty International Financial Services, Inc.
http://www.lifs.info

mailto:christopher.anzalone@lifs.info
954-202-9491



**Confidentiality Warning**
This e-mail may contain privileged and/or confidential information for which the sender does not waive any related rights and obligations. It is intended for the named recipient (s) only. Any distribution, use or copying of this e-mail or the information it contains by other than an intended recipient is unauthorized.  If you have received this e-mail in error please advise (by return e-mail) immediately and please do not disclose the contents to anyone or make copies.

5/13/2011

# EXHIBIT H



# LUBELL & ROSEN
### ATTORNEYS AT LAW

STEVEN L. LUBELL*
MARK L. ROSEN‡
MARSHALL A. ADAMS
BERNARD M. CASSIDY
WILLIAM C. PHILLIPPI
ANDREA L. JAKOB

G. ISABEL CASTILLO
JULIA M. INGLE
ARIEL D. SOFRO
ADI AMIT
* BOARD CERTIFIED IN CIVIL TRIAL LAW
‡ BOARD CERTIFIED IN HEALTH LAW
† OF COUNSEL

June 2, 2011

**VIA OVERNIGHT DELIVERY**

Chris Anzalone
Liberty International Financial Services, Inc.
6301 NW 5th Way, Suite 5000
Fort Lauderdale, FL 33309

     Re:    William Olson individual, family and trust accounts

Dear Mr. Anzalone:

     The undersigned represents The Olson's in the above referenced matter. We have been advised that despite repeated demand, your company has failed and refused to return monies belonging to my client, his wife and their trust. The monies being wrongfully held are as follows:

| | |
|---|---|
| Silver Account | $183,121.04 |
| Wright Living Trust Account | $207,563.42 |
| Maureen's IRA | $104,880.00 |
| William's IRA | $ 15,318.00 |
| Real Estate Fund | $110,000.00 |
| **SUBTOTAL** | **$620,882.46** |
| | |
| Less wires received | -$100,000.00 |
| | -$100,000.00 |
| **SUBTOTAL** | **$420,882.46** |

     There is no excuse for your failure to return these funds and we demand that you immediately tender these funds to the Lubell & Rosen Trust Account. Should you fail to do so within the next ten days, further comprehensive legal action may be taken without any further notice. A demand under the Florida Civil Theft Statute follows. In the event that payment is made within ten days, the treble damages aspect of that demand will be waived, however, otherwise, at the expiration of that time, the demand will not be waived.

200 S. Andrews Avenue, Suite 900, Fort Lauderdale, Florida 33301 · Phone: 954-755-3425 · Fax: 954-755-2993
6400 Jericho Turnpike, Suite 101, Syosset, New York 11791 · Phone: 866-655-3425 · Fax: 866-655-4779
· www.lubellrosen.com

There are also IRA penalties in the amount of $19,841.00 proximately caused by the handling of my clients' accounts and for which you agreed to pay. When added, this revises the subtotal to $440,723.46. In addition to the $440,723.46, we are advised that Liberty owes and has agreed to pay in emails dating back to March, the losses suffered by my client in his silver position of 431,062.68. The total owed is $871,786.14. We demand immediate payment. Failure of you and your firm to comply with this demand will result in immediate and comprehensive legal action.

### Demand under Fla. Stat.§772.11

Fla. Stat. §772.11 states:

Any person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of ss. 812.012-812.037 or s. 825.103(1) has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $ 200, and reasonable attorney's fees and court costs in the trial and appellate courts. Before filing an action for damages under this section, the person claiming injury must make a written demand for $ 200 or the treble damage amount of the person liable for damages under this section. If the person to whom a written demand is made complies with such demand within 30 days after receipt of the demand, that person shall be given a written release from further civil liability for the specific act of theft or exploitation by the person making the written demand. . .

Fla. Stat. § 772.11

The amount which we know is subject to the Florida Civil Theft statute is $420,882.46. Treble damages therefore equal $1,262,647.38. For now, we are making this demand only of the corporate entity, but at such time as we determine what was done with the Olson's money additional demands may be made. Please make your good draft payable to L&R Trust account within thirty days of the date of this letter and we will release you from further civil liability.

It is imperative that you understand the position in which you have placed yourself. I am at your service to facilitate the payment of the monies due.

Yours truly,

Marshall A. Adams, Esquire

cc:     Chris Anzalone, 9986 Equus Circle, Boynton Beach, FL 33472
        Client

200 S. Andrews Avenue, Suite 900, Fort Lauderdale, Florida 33301 · Phone: 954-755-3425 · Fax: 954-755-2993
6400 Jericho Turnpike, Suite 101, Syosset, New York 11791 · Phone: 866-655-3425 · Fax: 866-655-4779

www.lubellrosen.com